UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARINA ORTEGA, )<br>    *Plaintiff*, )<br> )<br>    v. )<br> )<br>ELI LILLY AND COMPANY, )<br>a Corporation, )<br>    *Defendant*. ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Carina Ortega, by and through her attorneys, complains of Defendant, Eli Lilly and Company, as follows.

## NATURE OF ACTION

1. This is an action brought under the Americans with Disabilities Act. Plaintiff, a former employee of Defendant, suffers from a variety of medical conditions, including polyarthralgia and fibromyalgia, which require significant monitoring, medication, and care, and which ultimately necessitated disability and medical leaves of absence from work. Her disability was exacerbated by attempting to return to work too soon and even with continued treatment her debilitating symptoms escalated, forcing her doctor to again restrict her from work and return her to medical leave. At the end of the period initially granted for her medical leave of absence, Plaintiff requested reasonable accommodations that would have allowed her to remain employed. Defendant, however, refused to engage in the interactive process to assess her requests for reasonable accommodation, refused to grant the requests without any claim of undue hardship, and instead terminated her employment.

**JURISDICTION AND VENUE**

2. Jurisdiction is provided by 28 U.S.C. §1331, as the claim involves a violation of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*.

3. Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), against Defendant. The EEOC has issued a Notice of Right to Sue and Plaintiff has brought the action within 90 days of its receipt.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

**PARTIES**

5. Plaintiff, Carina Ortega, an individual, (hereinafter "Plaintiff"), is a citizen of the State of Illinois and resident of DuPage County and was formerly employed by Defendant.

6. Defendant, Eli Lilly and Company (hereinafter "Defendant" or "Eli Lilly"), is an Indiana corporation, is registered as a foreign corporation with the State of Illinois, and regularly conducts business throughout the State of Illinois, including in DuPage County.

7. At all times relevant hereto, Defendant was a covered employer under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12111(5).

**FACTUAL ALLEGATIONS**

8. Plaintiff began her employment with Defendant in approximately April of 2015, working as a Senior Sales Representative.

9. Defendant is a large corporation, employing approximately 35,000 individuals, with offices in some 18 different countries, while selling its products in over 125 countries, and generating annual revenue of roughly $24 billion dollars.

10. From April of 2015 through April of 2019, Plaintiff performed her job in an excellent manner, for which she received various merit and performance-based awards, including being routinely recognized in the performance based rewards systems, receiving annual base pay increases, and annually receiving bonuses for always exceeding her sales target. Plaintiff was on track to exceed her target for the 2019 year, as well.

11. As a Senior Sales Representative, Plaintiff's essential job duties included physically visiting and educating the primary care physicians in her territory about her assigned medications. At the time of her termination she was in charge of at least 5 different medications and for all of which she had to know the drug facts, the interactions, instructions for dosage and usage, and the treatment of the medical conditions for each. She was personally responsible for carrying and distributing a large number of sample medications – often in a large cooler, with additional samples in a large bag, and written promotional materials – to the primary care physicians; all samples and materials had to be picked up from a storage area, placed in her car daily, walked to each facility visited, brought back from the facility to her car, and then at the end of the day removed from her car and again walked to the proper storage area, sometimes requiring multiple trips.

12. In approximately late April 2019, Plaintiff was suffering from extreme musculoskeletal pain, excessive fatigue, swelling, dizziness, peripheral neuropathy in her legs, loss of sleep, and other debilitating symptoms requiring constant treatment through medications and physical therapy.

13. Because of this, Plaintiff routinely and repeatedly had issues concentrating and focusing, caring for herself, sleeping, and performing physical tasks as simple as walking, standing, and working; she required daily medications to treat her symptoms and to tolerate her

concentration impairment, poor sleep quality, and severe physical pain.

14. From April to June of 2019, Plaintiff's condition progressively worsened until finally her doctor placed her on a full work restriction at the beginning of June.

15. Plaintiff then completed an application for Family and Medical Leave and under the company's Short Term Disability leave policy, with the intention to return to work by the end of June.

16. Because of the deterioration of her condition and the exacerbation of her symptoms, Plaintiff began receiving additional treatment and care by multiple health professionals and remained under the care of a health professional for her disability while on leave.

17. Plaintiff initially returned to work from her medical leave on June 27, 2019.

18. Later, in July, Defendant, through its agent, approved the previous request for FMLA leave because of Plaintiff's serious health condition, and also approved her claim for Short Term Disability benefits.

19. Plaintiff's attempt to return to work, however, only increased her symptoms, exacerbating her musculoskeletal pain, excessive fatigue, dizziness, and impairing her ability to concentrate, focus, sleep, care for herself, perform manual tasks, walk, stand, and lift.

20. Because of the decline in Plaintiff's condition following her return to work, Plaintiff's physician again placed her on a full work restriction, taking her off of work beginning July 22, 2019.

21. Plaintiff thereafter filed another request for FMLA leave and for Short Term Disability benefits.

22. Around September 13, 2019, Plaintiff submitted medical documentation to Defendant from her physician noting her diagnosis of polyarthralgia (fibromyalgia) and fatigue

and that she was currently incapable of returning to work but anticipated that, with continued treatment, she would be medically able to return by November 1, 2019.

23. Approximately a week later, Defendant gave Plaintiff notice that her FMLA claim, based on her serious medical condition, was approved, but only for the period of July 22 through September 26, 2019.

24. At the same time, Defendant informed Plaintiff that it had denied her request for Short Term Disability leave benefits, because of which, as of September 27, Defendant placed Plaintiff into an unpaid leave of absence status.

25. On or around October 2, 2019, Plaintiff emailed Defendant several questions about the consequences of, and processes following, the denial of the Short Term Disability claim, one of which was: "What type of reasonable accommodations can the [sic] Lilly afford me given my disability?"

26. In a later email to Defendant on October 7, 2019, Plaintiff noted that the questions from her October 2 email had gone unanswered and again made a request for accommodation, writing, "…I am currently suffering from chronic pain, chronic fatigue and a number of other symptoms…Additionally, in reviewing the employee handbook, I've noted that Lilly offers several 'Personal Leaves' of absence. I would like consideration to extend my leave at a minimum until November 1, 2019. My Rheumatologist has instructed me to stay off work until then and I want to be compliant with his instructions. What additional medical justification is needed for this request?"

27. On Wednesday, October 9, 2019, after a phone call with Plaintiff discussing her condition and inability to return until November, Defendant responded to Plaintiff's email by instructing her and her healthcare provider to complete another medical certification form, even

though Plaintiff had submitted many supporting medical records in the previous months.

28. In the call on October 9, Plaintiff advised Defendant that she was scheduled for another appointment with her doctor on October 17 and could provide the additional medical certification after that appointment, to which plan Defendant agreed.

29. On Monday, October 14, 2019, by letter, Defendant instructed Plaintiff that she was on an unauthorized leave and must return to work by 9 a.m. on October 16, 2019, and must be actively making sales visits by 1 p.m. or it would consider her failure to work as a "voluntary resignation."

30. Plaintiff received Defendant's letter on Tuesday, October 15, and responded by calling, leaving a voicemail, and also by email explaining that Defendant knew she remained unable to return to work by October 16 and further reminding Defendant that she had been requesting an accommodation to extend her unpaid medical leave to November 1, and also to discuss a part-time schedule on her return; Plaintiff's email asked specifically, "Does this mean that Lilly is not considering the request for reasonable accommodations?"

31. Defendant did not respond to the follow up inquiry about her request for accommodations, provide any alternatives, or suggest they continue to evaluate or discuss how Plaintiff could potentially be accommodated.

32. Further, Defendant did not provide any explanation as to how Plaintiff's proposed accommodations, that were consistent with her medical restrictions, would pose an undue hardship for Defendant.

33. Instead, the next day, October 16, 2019, Defendant terminated Plaintiff's employment.

34. As a result of Defendant's conduct, Plaintiff has lost wages and other benefits and

has suffered financial hardship and damage to her career and reputation, as well as emotional distress, loss of enjoyment of life, inconvenience, and similar non-pecuniary losses.

**COUNT I**
**FAILURE TO ACCOMMODATE IN VIOLATION**
**OF THE AMERICANS WITH DISABILITIES ACT**

35. Plaintiff realleges paragraphs 1 through 34 and incorporates them as if fully set forth herein.

36. Title I of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*, as amended, makes it unlawful for an employer to fail to accommodate an employee's disability.

37. By its conduct as alleged herein, Defendant failed to accommodate Plaintiff's disabling medical condition.

38. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's rights to be free from impermissible disability discrimination.

39. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count I as follows:

   a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended, and enjoin all officers, agents, employees, and all persons in active concert or participation with it from engaging in further unlawful conduct prohibited by the ADA;

   b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

   c) Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or, in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

e) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

f) Award Plaintiff punitive damages;

g) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## DISCRIMINATION IN VIOLATION
## OF THE AMERICANS WITH DISABILTIES ACT

40. Plaintiff realleges paragraphs 1 through 34 and incorporates them as though fully set forth herein.

41. Title I of the Americans with Disabilities Act, specifically 42 U.S.C. §12101 *et seq.*, makes it unlawful to discriminate against an employee on the basis of an employee's disability, because of a record of disability, or because the employer regards the employee as suffering from a disability.

42. By its conduct as alleged herein, Defendant discriminated against Plaintiff, in that Defendant refused to allow Plaintiff to return to work and effectively terminated her employment because of her disability, because Defendant was aware of Plaintiff's record of having a disability, and/or because Defendant further regarded Plaintiff as being disabled.

43. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

44. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count II as follows:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended, and enjoin all officers, agents, employees, and all persons in active concert or participation with it from engaging in further unlawful conduct prohibited by the ADA;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

c) Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or, in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

e) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

f) Award Plaintiff punitive damages;

g) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

h) Award Plaintiff any and all other relief as the Court deems just in the premises.

        Respectfully submitted,
        CARINA ORTEGA

        /s/ John P. Madden
        Attorney for the Plaintiff

John P. Madden
Katherine D. Ellis
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
jmadden@ompc-law.com
Atty No. 6243400